IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2009 MAY 29 PM 1: 44
CLERK_____
SO. DIST. OF GA.

BOBBY MARSHAY HERNDON,      )
                           )
           Plaintiff,      )
                           )
      v.                   )      CV 107-152
                           )
JOHN BUSH, Burke County    )
Sheriff's Office Jail Commander, et al.,  )
                           )
           Defendants.     )

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

*Pro se* Plaintiff, an inmate currently incarcerated at Wilcox State Prison, commenced

this civil action pursuant to 42 U.S.C. § 1983. The matter is now before the Court on

Defendants' motions for summary judgment. (Doc. nos. 20, 21). Because Plaintiff has not

filed any response, the Court deems the motions for summary judgment unopposed.[1] See

Loc. R. 7.5. For the reasons stated more fully below, the Court **REPORTS** and

**RECOMMENDS** that Defendants' motions for summary judgment be **GRANTED**, that a

---

[1] The Clerk has given Plaintiff notice of Defendants' motions for summary judgment, has apprised him of his right to file affidavits or other materials in opposition, and has informed him of the consequences of failing to respond. (Doc. no. 24). Moreover, after noting that Plaintiff had not responded, the Court entered an order instructing him about the effect of failing to respond and giving him additional time to prepare a response. (Doc. no. 26). Accordingly, the notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (*per curiam*), are satisfied. Of course, the Court acknowledges that the mere fact that the instant motions are unopposed does not entitle the Court to grant the motions without considering the merits. United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Florida, 363 F.3d 1099, 1101 (11th Cir. 2004) ("[T]he district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather, must consider the merits of the motion.").

**FINAL JUDGMENT** be entered in favor of Defendants, and that this case be **CLOSED**.

## I.  FACTS

At all times relevant to the events which form the basis of this lawsuit, Plaintiff was an inmate at the Burke County Jail ("the Jail"). Plaintiff claims that in March, 2006, a maintenance contracting service went to the Jail to unclog the drains and poured "some kind of toxic chemical" down the shower drains. (Doc. no. 25, Pl.'s Dep., pp. 6-7). As Plaintiff was housed in a cell next to where the drains were being treated, Plaintiff alleges that the fumes from the "toxic chemical" used to clear the drains hurt his eyes.[2] (Id. at 8).

On March 30, 2006, Plaintiff complained to Defendant Williams, a nurse at the Jail, of discomfort in his left eye. (Doc. no. 21, Williams Aff.). On the next day, Plaintiff was taken to Dr. Jackson, the physician that provides healthcare to the inmates incarcerated at the Jail. (Id.). Dr. Jackson prescribed Vigamox eye drops. (Id.). These eye drops were obtained by Defendant Williams and were given to Plaintiff. (Id.). Plaintiff again complained of discomfort in his left eye on May 15, 2006. (Id.). Again, on the next day he was taken to see

---

[2]In Plaintiff's complaint, he alleged that the "toxic chemicals" damaged his left eye. (Doc. no. 1, pp. 10-11). Plaintiff claimed that after he was subjected to the "toxic chemicals," he was taken to the Jail's infirmary; however, Defendant Williams allegedly failed to provide proper emergency medical assistance, and further failed to inform the jail supervisors that Plaintiff was in immediate need of outside emergency medical assistance. (Id.). In addition, Plaintiff claimed that he had written several medical complaint forms to Defendant Bush, and each time, Plaintiff was denied medical treatment for his eye. (Id.). According to Plaintiff's complaint, after several days he was seen by a doctor. (Id.). Plaintiff also claimed that the doctor found that Plaintiff's left eye was irreparably damaged from his exposure to the acid based chemical. (Id.). Plaintiff's eye still causes discomfort, pain, and has developed glaucoma. (Id. at 12). Plaintiff argued that Defendant Bush was responsible for Plaintiff's well being while he was confined at the Jail and was responsible for arranging for specialized medical care outside the jail. (Id. at 14).

Dr. Jackson, who ordered more eye drops and suggested that Plaintiff be taken to an optometrist. (Id.). Accordingly, Plaintiff was taken to Dr. Alan Durant, an optometrist. (Id.).

Dr. Durant states that he examined Plaintiff on June 7, 2006. (Id. at Durant Aff.). According to Dr. Durant, during the examination Plaintiff told him that he (Plaintiff) had gotten acid in his eye. (Id.). Upon examination of Plaintiff's left eye, Dr. Durant noted that he had no light perception and concluded that Plaintiff was essentially blind in that eye. (Id.). However, according to Dr. Durant, "The condition [he] observed would not have been caused by exposure to acid but by some type of trauma and was longstanding." (Id.). As such, Dr. Durant questioned Plaintiff about any trauma he had suffered to his left eye, and Plaintiff told him that his eye had been injured in 1984 in a fishing accident. (Id.). Furthermore, Plaintiff informed Dr. Durant that he had lost his vision some time in 2003. (Id.). Dr. Durant diagnosed Plaintiff with "band keratopathy which results from trauma and would have nothing to do with exposure to an agent such as acid." (Id.). Finally, Dr. Durant "observed nothing that would be indicative of acid exposure." (Id.).

Plaintiff admitted on his inmate intake forms in 1993, 2000, and 2002, for previous incarcerations, that he had a visual impairment to his left eye. (Doc. no. 25, Pl.'s Dep., pp. 14-17). Plaintiff also stated at his deposition that he had surgery on his left eye in 1984, after a fishing accident where a fish-hook became lodged in his left eye. (Id. at 15-17).

## II.    DISCUSSION

### A.    Summary Judgment Standard

Summary judgment is appropriate only if "there is no genuine issue as to any material

fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Applicable substantive law identifies which facts are material in a given case.[3] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When seeking summary judgment, the movant must show, by reference to materials on file, that there are no genuine issues of material fact to be decided at a trial. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). If the burden of proof at trial rests with the movant, to prevail at the summary judgment stage, the movant must show that, "on all the essential elements of its case . . . , no reasonable jury could find for the nonmoving party." United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1438 (11th Cir. 1991) (en banc). On the other hand, if the non-moving party has the burden of proof at trial, the movant may prevail at the summary judgment stage either by negating an essential element of the non-moving party's claim or by pointing to specific portions of the record that demonstrate the non-moving party's inability to meet its burden of proof at trial. Clark, 929 F.2d at 606-08 (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex Corp. v. Catrett, 477 U.S. 317 (1986)). Merely stating that the non-moving party cannot meet its burden at trial is not sufficient. Clark, 929 F.2d at 608. Evidence presented by the movant is viewed in the light most favorable to the non-moving party. Adickes, 398 U.S. at 157.

---

[3]The Court is mindful that for purposes of summary judgment, only disputes about material facts are important. That is, "[t]he mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003) (citation omitted).

4

If the moving party carries the initial burden, then the burden shifts to the non-moving party "to demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark, 929 F.2d at 608. The non-moving party cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. Morris v. Ross, 663 F.2d 1032, 1034 (11th Cir. 1981). Rather, the non-moving party must respond either by affidavits or as otherwise provided in Fed. R. Civ. P. 56. "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255 (quoting Adickes, 398 U.S. at 158-59). A genuine issue of material fact is said to exist "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

**B.     Merits of Plaintiff's Claims**

Bearing the standard for a motion for summary judgment in mind, Defendants' motion for summary judgment should be granted.[4] To survive Defendants' motion for summary judgment, Plaintiff must produce evidence from which a reasonable jury could

---

[4]A claim that a pretrial detainee has been denied adequate medical care is properly addressable under the Due Process Clause of the Fourteenth Amendment. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). The Eleventh Circuit Court of Appeals has held that "in regard to providing pretrial detainees with basic necessities as food, living space, and medical care the minimum standard allowed by the Due Process Clause is the same as that allowed by the Eighth Amendment for convicted persons." Hamm v. Dekalb County, 774 F.2d 1567, 1574 (11th Cir. 1985). Because the Eleventh Circuit has held that the minimum standard for the provision of basic necessities, including medical care, is the same for convicted prisoners under the Eighth Amendment and for pretrial detainees under the Fourteenth Amendment, it is appropriate to examine Eighth and Fourteenth Amendment decisional law concerning Plaintiff's claim. See Lancaster v. Monroe County, 116 F.3d 1419, 1425 n.6 (11th Cir. 1997) ("Because both Eighth Amendment cases and Fourteenth Amendment cases establish what constitutes 'deliberate indifference,' we will rely upon decisions in both types of cases.").

conclude: (1) that Plaintiff had an objectively serious medical need, (2) that Defendants acted with deliberate indifference to that need, and (3) that Plaintiff's injury was caused by the Defendants' wrongful conduct. Goebert v. Lee County, 510 F.3d 1312, 1326 (11th Cir. 2007) (citations omitted).

Here, Defendants argue that Plaintiff did not have an objectively serious medical need. Notably, Plaintiff does not contest this fact. However, even if the Court were to assume that the blindness in Plaintiff's left eye was a serious medical need, Plaintiff has not shown that Defendants acted with deliberate indifference to that need. To show that Defendant was deliberately indifferent to his medical needs under the second prong of the Goebert test, Plaintiff must offer some proof that Defendant: (1) was subjectively aware of a serious risk to Plaintiff's health, and (2) that Defendant disregarded that risk by (3) following a course of action which constituted "more than mere negligence." Goebert, 510 F.3d at 1326. In addition, the prisoner plaintiff seeking to show that a delay in medical treatment amounted to deliberate indifference "must place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." Hill v. Dekalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1188 (11th Cir.1994), *abrogated in part on other grounds by* Hope v. Pelzer, 536 U.S. 730, 739 n.9 (2002).

Under this standard, Plaintiff's claims against Defendants must fail. To begin, Plaintiff claimed in his complaint that the "toxic chemicals" damaged his left eye. (See generally doc. no. 1). The record reflects that Plaintiff admitted that in 1984 he had a fishing accident where a fish-hook became lodged in his left eye (doc. no. 25, Pl.'s Dep., p. 12); as a result of this accident he underwent surgery in that eye (id.); he complained of vision

6

problems as far back as 1993 (id. at 14); and finally, Plaintiff admitted to Dr. Durant that he had lost his vision some time in 2003 (doc. no. 21, Durant Aff.). Furthermore, the uncontroverted evidence presented by Defendants reveals that Plaintiff was diagnosed by an optometrist with "band keratopathy which results from trauma and would have nothing to do with exposure to an agent such as acid." (Id.). Indeed, Dr. Durant "observed nothing that would be indicative of acid exposure." (Id.).

Here, the facts show that Plaintiff was essentially blind in his left eye, and that Plaintiff admitted that his loss of vision occurred approximately three years before the "toxic chemicals" event at the Jail. Therefore, although Plaintiff claimed – in his complaint– that a doctor found that his eye was irreparably damaged from his exposure to the chemicals, Plaintiff has provided no evidence in support of this statement. Indeed, the record reflects otherwise; Dr. Durant, an optometrist, "observed nothing [concerning the damage in Plaintiff's left eye] that would be indicative of acid exposure."

Moreover, the evidence shows that Plaintiff received medical attention as soon as he requested such attention. Plaintiff alleged in his complaint that after he was subjected to the "toxic chemicals," he was taken to the Jail's infirmary; however, Defendant Williams allegedly failed to provide proper emergency medical assistance, and further failed to inform the Jail supervisors that Plaintiff was in immediate need of outside emergency medical assistance. (Doc. no. 1, pp. 10-11). In addition, Plaintiff claimed that he had written several medical complaint forms to Defendant Bush, and each time, Plaintiff was denied medical treatment for his eye. (Id.). However, Plaintiff has not provided any evidence to support these statements. Rather, the record evidence establishes that Plaintiff received medical

treatment when he requested it.

On March 30, 2006, Plaintiff complained to Defendant Williams that his eye hurt; the next day, Plaintiff was taken to see Dr. Jackson, the physician who provides health care to the Jail inmates. (Doc. no. 21, Williams Aff.). Dr. Jackson prescribed eye drops and Defendant Williams obtained these eye drops and provided them to Plaintiff. On May 15, 2006, Plaintiff again complained to Defendant Williams of discomfort in his eye; again, the next day, Plaintiff was taken to see Dr. Jackson. (Id.). At this second doctor's visit, Dr. Jackson again prescribed eye drops as well as recommended that Plaintiff be seen by an optometrist. (Id.). On June 7, 2006, Plaintiff was seen by Dr. Durant, an optometrist. (Id.; Durant Aff.).

Concerning Plaintiff's contention that Defendant Williams failed to provide proper emergency medical assistance, and further failed to inform the Jail supervisors that Plaintiff was in immediate need of outside emergency medical assistance, the Eleventh Circuit has consistently held that a mere difference in opinion between prison medical officials and the inmate as to the latter's diagnosis or course of treatment does not support a claim of cruel and unusual punishment. See Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991); Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989). That is, the burden of proving deliberate indifference cannot be met simply by arguing that an inmate wanted a different type of treatment. Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Where a prisoner has received . . . medical attention and the dispute is over the adequacy of treatment, federal courts are generally reluctant to second guess medical judgments. . . . Id. (citation omitted)). Here, the record reflects, and Plaintiff admits, that when he was subjected to the

"toxic chemicals" he was taken to the infirmary. The record further reflects, as noted above, that Plaintiff was seen by the Jail physician twice, as well as treated by an optometrist. None of the examining doctors concluded that the treatment received by Plaintiff was inadequate or that Plaintiff should have received a different course of treatment.

Plaintiff also complained that Defendant Bush denied medical treatment for his eye each time Plaintiff submitted medical complaint forms, and was responsible for Plaintiff's well being while he was confined at the Jail – including arranging for specialized medical care outside the jail. (See generally doc. no. 1). As previously noted, the two times Plaintiff complained of discomfort in his left eye, Plaintiff was taken to a doctor the next day. Additionally, on the recommendation of the Jail physician, Plaintiff was also taken to an optometrist. To the extent Plaintiff claims that Defendant Bush, as the Jail commander, is responsible for Plaintiff's purported eye injury because he should have had Plaintiff removed from his cell while the "toxic chemicals" were being used, his argument fails. Plaintiff has simply not established any connection that the purported use of "toxic chemicals" resulted in any injury to his left eye.

Given these facts, there is nothing from which to suppose that Defendants were deliberately indifferent to Plaintiff's medical needs. Accordingly, the motions for summary judgment filed by Defendants should be granted.

## III. CONCLUSION

For the reasons explained above, the Court **REPORTS** and **RECOMMENDS** that Defendants' motions for summary judgment (doc. nos. 20, 21) be **GRANTED**, that a

**FINAL JUDGMENT** be entered in favor of Defendants, and that this case be **CLOSED**.[5]

SO REPORTED and RECOMMENDED this 27th day of May, 2009, at Augusta, Georgia.


W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[5]The Court's conclusion in this regard pretermits consideration of Defendants' remaining arguments.